ORAL ARGUMENT NOT YET SCHEDULED

No. 26-60806

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,

*Plaintiffs-Appellees*,

UNITED STATES OF AMERICA,

*Movant-Appellant*,

v.

X.AI CORPORATION, *et al.*,

*Defendants*.

---

On Appeal from the United States District Court
for the Northern District of Mississippi,
Case No. 3:26-cv-00074-DMB-JMV

---

# BRIEF OF *AMICI CURIAE* X.AI CORP. AND MZX TECH LLC SUPPORTING MOTION FOR STAY PENDING APPEAL

---

*(Counsel listed inside cover)*

Paul D. Clement (lead counsel)
Chadwick J. Harper*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 788-4311
paul.clement@clementmurphy.com
chad.harper@clementmurphy.com
* *Supervised by principals of the firm who are members of the Virginia bar*

Michael B. Buschbacher
Jimmy Conde
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, D.C. 20006
(202) 955-0620 (MB)
(646) 266-4011 (JC)
mbuschbacher@boydengray.com
jconde@boydengray.com

James Burnham
Kenton J. Skarin
Reid Coleman
SPACEXAI CORP.
MZX TECH LLC
800 W. Cesar Chaves Street
Austin, TX 78701
jburnham@x.ai
kskarin@x.ai
rcoleman@x.ai

*(Continued)*

Jeremy C. Marwell
Patrick D. Traylor
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
jmarwell@velaw.com
ptraylor@velaw.com

Christopher V. Popov
VINSON & ELKINS LLP
845 Texas Avenue
Suite 4700
Houston, TX 77002
(713) 758-2636
cpopov@velaw.com

Daniel W. Van Horn
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

*(Continued)*

Adam Mehes
SPACEXAI CORP.
MZX TECH LLC
245 W 17th Street
New York, NY 10011
am@x.ai

P. Ryan Beckett
Keri E. Herrington
BUTLER SNOW LLP
1020 Highland Colony Pkwy.
Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com
keri.herrington@butlersnow.com

*Counsel for X.AI Corp. (now known as SpaceXAI Corp.) and MZX Tech LLC*

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

*NAACP v. X.AI Corp.*

No. 26-60806

The undersigned counsel of record certifies that in addition to the persons and entities listed in Appellant's Certificate of Interested Persons, the following listed persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of the Court may evaluate possible disqualification or recusal.

1. **Beckett, P. Ryan**, counsel for X.AI Corp. and MZX Tech LLC.
2. **Burnham, James**, counsel for X.AI Corp. and MZX Tech LLC.
3. **Buschbacher, Michael B.**, counsel for X.AI Corp. and MZX Tech LLC.
4. **Clement, Paul D.**, counsel for X.AI Corp. and MZX Tech LLC.
5. **Coleman, Reid**, counsel for X.AI Corp. and MZX Tech LLC.
6. **Conde, Jimmy**, counsel for X.AI Corp. and MZX Tech LLC.
7. **Harper, Chadwick J.**, counsel for X.AI Corp. and MZX Tech LLC.
8. **Herrington, Keri E.**, counsel for X.AI Corp. and MZX Tech LLC.
9. **Marwell, Jeremy C.**, counsel for X.AI Corp. and MZX Tech LLC.
10. **Mehes, Adam**, counsel for X.AI Corp. and MZX Tech LLC.

11. **MZX Tech LLC**, *amicus curiae*, is a privately held limited liability company. MZX Tech LLC is a wholly owned subsidiary of X.AI Corp (now known as SpaceXAI Corp.). X.AI Corp. is wholly owned by X.AI Holdings LLC (now known as SpaceXAI Holdings LLC). X.AI Holdings LLC is wholly owned by Space Exploration Technologies Corp. ("SpaceX"), a publicly traded company (NASDAQ: SPCX). No publicly held company owns 10% or more of SpaceX.

12. **Popov, Christopher V.**, counsel for X.AI Corp. and MZX Tech LLC.

13. **Skarin, Kenton J.**, counsel for X.AI Corp. and MZX Tech LLC.

14. **Traylor, Patrick D.**, counsel for X.AI Corp. and MZX Tech LLC.

15. **Van Horn, Daniel W.**, counsel for X.AI Corp. and MZX Tech LLC.

16. **X.AI Corp.**, *amicus curiae*, is a privately held corporation. X.AI Corp. (now known as SpaceXAI Corp.) is wholly owned by X.AI Holdings LLC (now known as SpaceXAI Holdings LLC). X.AI Holdings LLC is wholly owned by SpaceX, a publicly traded company (NASDAQ: SPCX). No publicly held company owns 10% of more of SpaceX.

*/s/ Jeremy C. Marwell*

Jeremy C. Marwell

*Counsel for* Amici Curiae *X.AI Corp. and MZX Tech LLC*

## TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS ..........................i

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT OF INTEREST AND INTRODUCTION........................................1

ARGUMENT ..............................................................................................3

I. A stay is necessary to avoid irreparable harms, including to xAI and MZX..............................................................................................3

II. Because the region's air quality is and will remain safe, a stay would not harm Plaintiffs or their members...............................................6

III. The United States will likely succeed on appeal because it has an express and unconditional statutory right to intervene....................................9

CONCLUSION ...........................................................................................11

CERTIFICATE OF COMPLIANCE.........................................................14

CERTIFICATE OF SERVICE ...................................................................15

## TABLE OF AUTHORITIES

**Cases:** **<u>Page(s)</u>**


*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ........................................................ 5

*Houston Contractors Associated v. Metro. Transit Auth. of Harris Cnty.*,
189 F.3d 467, 1999 WL 511455 (5th Cir. June 28, 1999) ................................ 9

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................ 6, 8

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ........................................................ 4, 11

*Ruiz v. Estelle*,
161 F.3d 814 (5th Cir. 1998) ........................................................ 9

*Ruiz v. Estelle*,
650 F.2d 555 (5th Cir. Unit A June 1981) ........................................................ 3

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ........................................................ 10

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ........................................................ 10

*United States v. Carpenter*,
526 F.3d 1237 (9th Cir. 2008) ........................................................ 5

*W. Va. Rivers Coal., Inc. v. Chemours Co. FC, LLC*,
178 F.4th 102 (4th Cir. 2026) ........................................................ 8

*Wages & White Lion Invs., L.L.C. v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ........................................................ 6

*White v. Tex. Am. Bank/Galleria, N.A.*,
958 F.2d 80 (5th Cir. 1992) ........................................................ 5

**Statutes:** **Page(s)**

42 U.S.C. § 7409(b)(1) .......... 7

42 U.S.C. § 7604(c)(2) .......... 1, 2, 9

**Federal Rules:**

Fed. R. App. Proc. 29(a)(4)(E) .......... 1

**Administrative Materials:**

91 Fed. Reg. 1,910, 1,925 (Jan. 15, 2026) .......... 8

Amendment to Agreed Order, *In re MZX Tech LLC*, Miss. Comm'n Env't Quality, Order No. 7739-26 (Sept. 11, 2026), https://perma.cc/2U72-FZ3L .......... 9

**Other Authorities:**

EPA, *Mississippi Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants*, https://www3.epa.gov/airquality/greenbook/anayo_ms.html .......... 7

EPA, *Tennessee Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants*, https://www3.epa.gov/airquality/greenbook/anayo_tn.html .......... 7

## STATEMENT OF INTEREST AND INTRODUCTION

Under federal law, the EPA Administrator has the right to intervene "at any time" in a Clean Air Act ("CAA") citizen suit, 42 U.S.C. § 7604(c)(2). That provision gives the federal government an absolute right to intervene in even a garden-variety citizen-suit proceeding, and the provision alone makes the district court's refusal to allow that intervention both inexplicable and reversible error. But this is no garden-variety citizen-suit provision, and the United States seeks to bring to bear not only EPA's environmental expertise but also the serious national-security implications of this misguided lawsuit. As defendants below, *amici curiae* X.AI Corp. ("xAI") and MZX Tech LLC ("MZX") have a self-evident and undeniable interest in allowing the United States' statutorily mandated intervention and a unique perspective on the importance of that intervention.[2]

After waiting months to file suit, Plaintiffs asked the district court to order xAI and MZX to shut down the temporary, portable turbines powering xAI's high-performance computing facilities near Southaven, Mississippi. The turbines—installed with the approval of the Mississippi Department of Environmental Quality

[2] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* state that no counsel for a party to this appeal authored this brief in whole or in part, and no party or counsel for a party to this appeal contributed money intended to fund the preparation of submission of this brief. No person other than *amici curiae* or their counsel contributed money intended to fund the preparation or submission of this brief.

(“MDEQ”)—have been, and remain, necessary to power the computing facilities, which, in turn, run xAI’s cutting-edge “super intelligence” (“SI”) model Grok and support other frontier SI models, like Anthropic’s Claude and Google’s Gemini. Plaintiffs’ requested injunctive relief would shut down those computing facilities and inflict serious harms on xAI, MZX, and hundreds of millions of SI customers and end-users worldwide, including the U.S. Department of War, which deploys Grok for active military operations.

Given the grave national interests at stake, the United States invoked its statutory right to intervene, *see* 42 U.S.C. § 7604(c)(2), and moved to dismiss the suit in July 2026. The district court, however, has yet to issue a written order on the United States’ motion, despite the United States having requested one after the court stated its intent to deny the United States’ intervention and to press forward with proceedings this month (*i.e.*, October 2026). As intervention delayed became intervention denied, and with a preliminary-injunction hearing looming, the United States appealed the district court’s constructive denial of intervention and now seeks a stay of further district-court proceedings.

It is vital that the district court does not proceed without the United States’ participation as a party. That is so not only because of the CAA’s plain text (and our Constitution’s structure, which vests federal law-enforcement power in the Executive) but also because the United States’ views on the national-security and

economic implications of shutting down operations at the Southaven facility necessarily inform where the public interest lies. xAI and MZX thus file this brief to provide their distinct perspective on why this Court should stay district-court proceedings pending the resolution of this appeal. Doing so would avert serious and irreparable harms to xAI, MZX, and their customers—including the American military—and would not harm Plaintiffs or their members. For the reasons that follow, and those in the United States' briefing, the Court should grant the United States' request for a stay pending appeal.

## ARGUMENT

### I. A stay is necessary to avoid irreparable harms, including to xAI and MZX.

A stay is necessary to "maintain the status quo pending a final determination" of the United States' party status, and to avoid irreparable harm to xAI, MZX, and the millions of customers that depend on their high-performance computing facility. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981) (per curiam).

***First***, absent a stay, further district-court proceedings on Plaintiffs' preliminary-injunction request will occur without the benefit of key facts, perspectives, and arguments that depend on allowing the United States to exercise its statutory right to intervene in citizen suits. The United States' perspective is vital, even in a garden-variety citizen suit, regarding, among other things, the interpretation and appropriate enforcement of the CAA and Mississippi's

implementing rules. But intervention in this highly unusual case is even more compelling to allow the United States to address the critical national-security role played by xAI's Grok, which currently depends on the Southaven turbines that Plaintiffs seek to shut down. *See* U.S. Mot. 4-5. As explained by the Department of War's Chief Digital and Artificial Intelligence Officer in a sworn declaration, Plaintiffs' proposed injunctive relief "*directly threatens ongoing national security interests*," given the U.S. military's reliance on Grok for active military operations. Dkt.85-1 ("Stanley Decl."), ¶¶3-10 (emphasis added). The case's profound national-security implications underscore why intervention—a statutory right—is absolutely compelling here. Absent party status, the United States cannot tender its own evidence, advance its own arguments, or file motions that protect its interests. *See Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967) (*amicus* status "not an adequate substitute for participation as a party"). xAI and MZX would, in turn, be prejudiced because the United States' absence would diminish their ability to develop a complete record bearing on all issues relevant to the preliminary-injunction motion, including the proper interpretation and application of federal air-quality laws, harms to the United States and non-moving parties, and where the public interest lies.

***Second***, if the district court were to move forward with proceedings during the pendency of this appeal, and this Court were later to hold that the district court

erred in denying the United States' intervention, the district court's work in the interim would likely have to be vacated and redone. Where a prospective intervenor was improperly denied the "opportunity to present their [views]," intervening district court orders are subject to vacatur. *White v. Tex. Am. Bank/Galleria, N.A.*, 958 F.2d 80, 84-85 (5th Cir. 1992); *see also Edwards v. City of Houston*, 78 F.3d 983, 1006 (5th Cir. 1996) (en banc); *accord United States v. Carpenter*, 526 F.3d 1237, 1242 (9th Cir. 2008). The prospect of the parties and the district court needlessly expending time and resources while this Court resolves the United States' appeal has nothing to recommend it.

***Third***, and relatedly, if the district court were to grant Plaintiffs' requested preliminary injunction while this appeal remains pending, xAI and MZX would face dire financial, operational, reputational, and business harms. Such an order would have massive fallout: the Grok tool would effectively cease to function; hundreds of millions of customers and users of Grok and other frontier SI providers relying on the computing infrastructure at issue here would suffer the impacts of a sudden power loss; and xAI and MZX would endure billions of dollars in financial losses, face a permanent competitive disadvantage from interruption of xAI's frontier SI models in a highly competitive global industry, and potentially lose highly specialized and highly sought-after employees. *See* Dkt.94-3 ("Jacobson Decl."), ¶¶24-38; Dkt.94-5 ("Trettel Decl."), ¶¶4-6, 9; *see also* Jacobson Decl. ¶¶11-15, 18-

19, 22. Those harms, moreover, have broader ramifications for U.S. national security—as one example, the American military relies on Grok for targeting operations in an ongoing military conflict—as well as the United States' national policy and international leadership in SI. *See* Jacobson Decl. ¶¶24, 32; Stanley Decl. ¶¶3-10.

A stay is the only way to prevent those harms from occurring during this appeal. Without a stay, even if this Court were to find error in the constructive denial of the United States' intervention motion, and then vacate intervening district-court proceedings, relief would come too late to avoid catastrophic damage to xAI, MZX, and the United States in the intervening period. These serious harms to non-moving parties heavily favor granting a stay. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) ("substantial financial injury" jeopardizing core business operations "irreparable" (citation omitted)).

## II. Because the region's air quality is and will remain safe, a stay would not harm Plaintiffs or their members.

Pausing the district-court proceedings while this Court resolves the United States' appeal would not harm Plaintiffs or their members. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). In the district court, Plaintiffs have asserted that emissions from the temporary turbines are causing air quality violations and adverse health impacts. But quantitative analysis of actual ambient air-quality data and gold-standard modeling of expected future conditions show that the temporary turbines

have not, and will not, cause or contribute to any violations of air-quality standards, which EPA sets with a margin of safety to protect public health. *See* 42 U.S.C. § 7409(b)(1). The record shows:

- The temporary, portable turbines were installed with prior written approval from the Mississippi Department of Environmental Quality. *See* Dkt.51-7 (determination letter).

- At all relevant times, the Southaven area (including the broader Memphis metropolitan region) has been formally designated as complying with applicable National Ambient Air Quality Standards for the air pollutants at issue (*i.e.*, ozone, nitrogen dioxide, fine particulate matter).[3]

- Analysis of publicly reported air quality monitoring data, as well as expert modeling of future conditions, show that local air quality has not been, and will not be, adversely affected by operation of the temporary turbines. *See* Dkt.94-4, ¶¶42, 45, 49, 53, 56.[4]

- The temporary turbines' controlled emission levels comply with the federal requirements for stationary combustion sources under EPA's

[3] EPA, *Tennessee Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants*, https://www3.epa.gov/airquality/greenbook/anayo_tn.html (last updated Sept. 30, 2026) (Shelby County); EPA, *Mississippi Nonattainment/Maintenance Status for Each County by Year for All Criteria Pollutants*, https://www3.epa.gov/airquality/greenbook/anayo_ms.html (last updated Sept. 30, 2026).

[4] Plaintiffs have introduced no evidence and provided no analysis to dispute those key empirical conclusions. Although Plaintiffs raised two methodological objections to Defendants' expert analysis related to expected turbine output, one was based on a factual error by Plaintiffs. As to the other, Defendants addressed and resolved it with an updated and amended expert report and analysis showing that the results were unchanged even using Plaintiffs' preferred approach. Defendants provided that report to the Plaintiffs and district court in anticipation of those materials being introduced into the record at the upcoming preliminary injunction hearing.

> New Source Performance Standards. *Compare* Dkt.1-1, at ECF p.11 n.27 (noting emission rates of 25 parts per million or less), *with* 91 Fed. Reg. 1,910, 1,925 (Jan. 15, 2026) (EPA finding 25 parts per million to be "the appropriate standard of performance for [nitrogen oxide] emissions from temporary [stationary] combustion turbines.").

Unable to materially dispute record evidence showing that the air is, and will remain, safe, Plaintiffs fall back on the concept that *any* incremental increase in emissions—apparently even one molecule—constitutes irreparable harm to them. That is incorrect as a matter of law. *See W. Va. Rivers Coal., Inc. v. Chemours Co. FC, LLC*, 178 F.4th 102, 115-16 (4th Cir. 2026) (reversing grant of preliminary injunction where plaintiffs relied on mere showing of incremental emissions, which does not "automatically constitute irreparable harm"); Dkt.94, at 10-12. Inconsequential changes in emissions levels fall far short of showing that allowing the status quo to continue will "*substantially* injure" Plaintiffs and their members. *Nken*, 556 U.S. at 426 (emphasis added).

Furthermore, the temporary turbines here are truly temporary: xAI, MZX, and MDEQ have entered into a formal, enforceable administrative order setting a mandatory retirement schedule for each of the turbines, and the facility is already transitioning to permanent, fully permitted power sources. Indeed, nearly a dozen of the portable turbines at issue have already been shut down and removed from the site, and every other remaining portable turbine has a definite shutdown date. *See* Dkt.127, at 6 & n.3 (citing Amendment to Agreed Order, *In re MZX Tech LLC*, Miss.

Comm'n Env't Quality, Order No. 7739-26 (Sept. 11, 2026), https://perma.cc/2U72-FZ3L). As a result, the basis for any possible claim of harm from a stay of proceedings pending this appeal's resolution dwindles with each passing day. Put differently, even accepting Plaintiffs' flawed premise that the temporary turbines' emissions are causing environmental or health impacts, such harms are at worst temporary and do not come close to outweighing the profound harms threatened if this Court does not grant a stay.

## III. The United States will likely succeed on appeal because it has an express and unconditional statutory right to intervene.

Under the Clean Air Act, the EPA Administrator "may intervene [in a citizen suit] as a matter of right at any time." 42 U.S.C. § 7604(c)(2). The district court should have given effect to that clear statutory command and promptly granted the United States' intervention months ago, averting the need for this appeal and stay motion. *See* U.S. Mot. 1-2; *accord Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998) ("no room for the operation of a court's discretion" with unconditional statutory intervention right); *Houston Contractors Associated v. Metro. Transit Auth. of Harris Cnty.*, 189 F.3d 467, 1999 WL 511455, at *1 (5th Cir. June 28, 1999) (unpub.) (reversing denial of United States' unconditional statutory right to intervene). Two additional considerations underscore why the United States will likely succeed on the merits and why a stay pending appeal is justified.

***First***, the statutory intervention right is best read to implicate not only the threshold question of party status but also the United States' right to dismiss a citizen enforcement suit. As the Supreme Court has made clear beyond cavil, "the Constitution vests the executive power in the President," and that means *all* of it. *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). Enforcing federal law—like the CAA—is at the very core of the executive power. *See, e.g.*, *Trump v. Slaughter*, 146 S. Ct. 2283, 2304 (2026). Allowing a citizen enforcement suit to proceed over the United States' objection raises serious constitutional problems. *See* U.S. Mot. 16-17; *accord* Dkt.55 at 13-19 (Defendants' motion to dismiss). In other words, the question of whether the United States should be a party to this case is likely intertwined with the question of whether the case should proceed at all. On the latter question, the United States' clearly expressed view is "no." *See generally* Dkt.86. The district court should not be allowed to frustrate those important statutory and constitutional objectives by withholding a written order on intervention while pressing forward with preliminary-injunction proceedings.[5]

***Second***, Plaintiffs' belated suggestion below that the United States could participate as an intervenor-*defendant* or *amicus* finds no support in statutory text, which confers an unconditional intervention right. Relegating the United States to

[5] Indeed, the constructive-denial doctrine exists to avoid district courts nullifying statutory intervention rights through inaction. *See* U.S. Mot. 10-12.

*amicus* status would limit its ability to protect key national interests by presenting evidence or arguments that may differ from those of the private parties. *See Nuesse*, 385 F.2d at 704 n.10. To the extent Plaintiffs' proposed intervenor-defendant label would constrain the United States' ability to dismiss the suit, it is similarly inconsistent with the statutory scheme (not to mention the Constitution), which grants primacy in enforcement to the United States, not private attorneys general via citizen suits. *See* U.S. Mot. 13-17; Dkt.55, at 13-19. The importance of those questions to the overall trajectory of this case underscores why a stay of district court proceedings is urgently warranted to allow this Court to resolve the status and role of the United States in this litigation.

## CONCLUSION

The Court should grant the United States' motion for a stay pending appeal.

Dated: October 12, 2026

Respectfully submitted,


*<u>/s/ Paul D. Clement (by permission)</u>*
Paul D. Clement (lead counsel)
Chadwick J. Harper*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 788-4311
paul.clement@clementmurphy.com
chad.harper@clementmurphy.com
* *Supervised by principals of the firm who are members of the Virginia bar*

Michael B. Buschbacher
Jimmy Conde
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, D.C. 20006
(202) 955-0620 (MB)
(646) 266-4011 (JC)
mbuschbacher@boydengray.com
jconde@boydengray.com

James Burnham
Kenton J. Skarin
Reid Coleman
SPACEXAI CORP.
MZX TECH LLC
800 W. Cesar Chaves Street
Austin, TX 78701
jburnham@x.ai
kskarin@x.ai
rcoleman@x.ai


*(Continued)*


*<u>/s/ Jeremy C. Marwell</u>*
Jeremy C. Marwell
Patrick D. Traylor
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
jmarwell@velaw.com
ptraylor@velaw.com

Christopher V. Popov
VINSON & ELKINS LLP
845 Texas Avenue
Suite 4700
Houston, TX 77002
(713) 758-2636
cpopov@velaw.com

Daniel W. Van Horn
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com


*(Continued)*

Adam Mehes
SPACEXAI CORP.
MZX TECH LLC
245 W 17th Street
New York, NY 10011
am@x.ai

P. Ryan Beckett
Keri E. Herrington
BUTLER SNOW LLP
1020 Highland Colony Pkwy.
Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com
keri.herrington@butlersnow.com

*Counsel for X.AI Corp. (now known as SpaceXAI Corp.) and MZX Tech LLC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 27(d)(2), because this brief contains 2,592 words, excluding the parts of the brief exempted by rule.

2. This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: October 12, 2026

*/s/ Jeremy C. Marwell*

Jeremy C. Marwell

*Counsel for* Amici Curiae *X.AI Corp. and MZX Tech LLC*

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that, on October 12, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: October 12, 2026

*/s/ Jeremy C. Marwell*

Jeremy C. Marwell

*Counsel for* Amici Curiae *X.AI Corp. and MZX Tech LLC*